FILED'06 FEB 28 13:59 USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| NATHANIEL COOPER, | ) |
| | ) |
| Plaintiff, | ) Civil No. 05-6303-TC |
| | ) |
| v. | ) |
| | ) ORDER |
| CITY OF NEWPORT; MARK JAMES | ) |
| MIRANDA; MICHAEL DEAN IVERSON; | ) |
| and ANDREW T. TAUFA'ASAU, | ) |
| | ) |
| Defendants. | ) |

COFFIN, Magistrate Judge.

Presently before the court are defendant Andrew Taufa'asau and defendants City of Newport, Mark James Miranda, Michael Dean Iverson's motions (## 13 and 18) for summary judgment.

///

1 - ORDER

## BACKGROUND

Plaintiff, a police officer with the Tualatin Police Department, was arrested by defendant Taufa'asau on February 28, 2004 on charges of Driving Under the Influence of Intoxicants following plaintiff's attendance at the Newport Seafood and Wine Festival. By his own admission, plaintiff had sampled 25 or more one-ounce samples of wine at the Festival, along with various seafood and snacks, over the three-hour period he was there. Approximately two hours after he left the Festival, plaintiff and some of his friends went to a local bar to eat, where plaintiff may have consumed an additional beer. While at the bar, one of plaintiff's friends accidentally spilled a full glass of beer on plaintiff, soaking plaintiff's T-shirt.

Shortly after the spill occurred, plaintiff and his friends agreed that it would be pleasant to build a fire on the beach, so plaintiff drove the group in his truck to a nearby Safeway to buy some firewood. After making his purchase, plaintiff drove over the curb and across the grass median strip and sidewalk in attempting to access Highway 101. Shortly thereafter, Iverson, a City of Newport police officer, stopped plaintiff to investigate. Plaintiff informed Iverson that he was a Tualatin police officer, and upon questioning admitted that he had been drinking at the Festival. Based on these facts and the smell of alcohol on plaintiff, Iverson called in Taufa'asau, another Newport police officer who was on a DUII shift. When Taufa'asau arrived, Newport Police Chief Miranda was on the scene, talking to Iverson.

Taufa'asau began investigating plaintiff for possible DUII. Plaintiff confirmed for Taufa'asau that he had been drinking, and began crying. Taufa'asau checked plaintiff for redness or watery eyes, but because plaintiff was crying Taufa'asau could not make any accurate determinations. He did note the odor of alcohol coming from plaintiff, but could not determine if

2 - ORDER

that odor emanated from plaintiff's breath or solely from his soaked shirt. After conducting a brief officer safety "pat down" of plaintiff, Taufa'asau asked plaintiff if he would do some field sobriety tests. Plaintiff declined.

At that point, Taufa'asau left plaintiff to confer with Iverson. Chief Miranda joined them. Following that conference, Taufa'asau returned to plaintiff and placed him under arrest for DUII. After his arrest and transport to the Lincoln County Jail, plaintiff refused to submit to an Intoxilyzer breath test for intoxication, and was also cited for that refusal.

Plaintiff hired a defense attorney to represent him on the DUII charge, who negotiated with the Lincoln County District Attorney's office in an attempt to secure a dismissal of the charges. Ultimately, however, plaintiff chose to plead no contest to the charge and to petition the court to allow him to enter a DUII diversion program which, when successfully completed, would result in the dismissal of the charge. The court held a plea hearing, allowed plaintiff's no contest plea, and found plaintiff guilty of the DUII offense. The court then allowed plaintiff to enter diversion prior to sentencing. As part of that resolution, the court also accepted the prosecutor's dismissal of the Intoxilyzer refusal citation.

Plaintiff subsequently fulfilled his obligations related to the diversion program, and the DUII charge was ultimately dismissed.

Plaintiff has now filed the instant action, in which he alleges that by arresting and prosecuting him without probable cause, defendants violated his rights under state and federal law.[1] Defendants seek summary judgment based on the doctrines of collateral estoppel and judicial estoppel.

---

1   Plaintiff apparently concedes that his malicious prosecution claims should be dismissed, and only maintains claims for False Arrest/False Imprisonment.

3 - ORDER

## STANDARD OF REVIEW

A party is entitled to summary judgment as a matter of law if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c); Bahn v. NME Hosp's, Inc., 929 F.2d 1404, 1409 (9th Cir. 1991). The moving party must carry the initial burden of proof. This burden is met through identifying those portions of the record which demonstrate the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. Id. The facts on which the opponent relies must be admissible at trial, although they need not be presented in admissible form for the purposes of opposing the summary judgment motion. Id.

The court must view the evidence in the light most favorable to the nonmoving party. Bell v. Cameron Meadows Land Co., 669 F.2d 1278, 1284 (9th Cir. 1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. Hector v. Wiens, 533 F.2d 429, 432 (9th Cir. 1976). The inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Valadingham v. Bojorquez, 866 F.2d 1135, 1137 (9th Cir. 1989). Where different ultimate inferences may be drawn, summary judgment is inappropriate. Sankovich v. Insurance Co. Of North America, 638 F.2d 136, 140 (9th Cir. 1981).

Deference to the non-moving party does have some limit. The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e) (emphasis added). Where "the record taken as a whole could not lead a rational trier of fact to

4 - ORDER

find for the non-moving party, there is no genuine issue for trial." Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation, 475 U.S. 574, 587 (1986). The "mere existence of a scintilla of evidence in support of the plaintiff's position would be insufficient." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 252 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Id. at 248. However, trial courts should act with caution in granting summary judgment, and may deny summary judgment "in a case where there is reason to believe that the better course would be to proceed to a full trial." Anderson, 477 U.S. at 255.

## DISCUSSION

### I. Collateral estoppel does not apply under the circumstances of this case.

The Oregon Supreme Court has noted, consistent with the jurisprudence of other state judiciaries and the federal judiciary, that specific issues already fully litigated in an Oregon state court should not be subject to re-visitation. This tenet is known as the doctrine of collateral estoppel, or issue preclusion, and the court recently described it in the following way:

> If a claim is litigated to final judgment, the decision on a particular issue or determinative fact is conclusive in a later or different action between the same parties if the determination was essential to the judgment. Issue preclusion applies to an issue of either fact or law.

Drews v. EBI Companies, 310 Or. 134, 139-40 (1990). Specifically, application of the doctrine is appropriate when:

1. The issue in the two proceedings is identical.

2. The issue was actually litigated and was essential to a final decision on the merits in the prior proceeding.

3. The party sought to be precluded has had a full and fair opportunity to be heard on that issue.

5 - ORDER

4.  The party sought to be precluded was a party or was in privity with a party to the prior proceeding.

5.  The prior proceeding was the type of proceeding to which this court will give preclusive effect.

<u>Nelson v. Emerald People's Utility Dist.</u>, 318 Or. 99, 104 (1993). Here, defendants seek to preclude plaintiff from asserting that the arresting officers lacked probable cause to arrest him and from denying guilt to the DUII charge, based on his petition to the court for entry into a DUII diversion program, which was facilitated by his plea of no contest to the DUII charge.[2]

Defendants' motivation for seeking such preclusion is obvious: because probable cause is a complete defense to a federal or state claim of false arrest or imprisonment, see, e.g., <u>Cervantes v. U.S.</u>, 330 F.3d 1186, 1188 (9th Cir. 2003) and <u>Bacon v. City of Tigard</u>, 81 Or.App. 147, 150 (Or.App. 1986), if plaintiff here is precluded from challenging probable cause, his claims cannot stand. However, based on the circumstances presented here, I cannot agree that collateral estoppel is appropriate.

---

2   The court is somewhat troubled by the use of his no contest plea and statements related to it because of the prohibition which Federal Rule of Evidence 410 places on the use of such materials. That Rule states, in relevant part, that: "[E]vidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions: . . . (2) a plea of nolo contendere; (3) any statement made in the course of any proceedings under Rule 11 of the Federal Rules of Criminal Procedure or comparable state procedure regarding either of the foregoing pleas[.]" Other courts have construed the rule to allow for evidence of the plea and relevant statements in cases similar to the one before this court. See, e.g., <u>Walker v. Schaeffer</u>, 854 F.2d 138, 143 (6th Cir. 1988) ("Rule 410 was intended to protect a criminal defendant's use of the nolo contendere plea to defend himself from future civil <u>liability</u>. We decline to interpret the rule so as to allow the former defendants to use the plea offensively, in order to obtain damages, after having admitted facts which would indicate no civil liability on the part of the arresting police."). The court does not find much supporting this interpretation on the face of the Rule. Nonetheless, whether the plea and statements are admissible is not a question necessary to the court's resolution of defendants' motions, and therefore the court declines to address this issue in greater detail.

6 - ORDER

In pleading no contest to the DUII charge and petitioning the court for entry into the DUII diversion, plaintiff did agree that the state could present witnesses who would testify in such a manner as to establish the elements of the DUII charge; essentially, he agreed that the arresting officers would likely testify that he was intoxicated and had been seen driving in that condition. However, nothing in plaintiff's statements to the court can be construed as a stipulation that he was, in fact, intoxicated, that he did, in fact, drive in that condition, or that the arresting officer had legally sufficient probable cause to arrest him at the time he did so. He simply agreed that there was evidence that the DA could present from which a factfinder <u>could</u> make those conclusions beyond a reasonable doubt. Even assuming, <u>arguendo</u>, that his no contest plea and the fact-finding hearing can constitute "actual litigation" with a "full and fair opportunity to be heard," the issue of probable cause to arrest him was simply not one specifically before the court nor one that he specifically agreed to in entering his plea.[3] Although the lines may appear a bit blurry in the instant case, an example may serve to illustrate why this must be so.

Imagine a scenario in which a bank has been robbed, and witnesses report that the robber was a black male, with no other significant description available. Further imagine that an officer begins detaining every black male in the surrounding vicinity. Subsequent to this mass detention, the police gather evidence (fingerprints at the scene, shoe impressions, the stolen cash

---

3  On the issue of his ultimate guilt, the analysis may be somewhat different. Although plaintiff did not specifically stipulate that he was guilty of the offense, his no contest plea resulted in a finding of guilt after a hearing in which the specific purpose was to determine whether sufficient evidence existed to prove such. The court might more easily agree, therefore, that the issue of his guilt was actually before the court and was the subject of a hearing providing plaintiff a full and fair opportunity to be heard. However, as the real issue in the claims in this litigation is whether the arresting officer had probable cause to arrest plaintiff, a finding on the preclusive effect of the guilty finding is unnecessary.

7 - ORDER

at a residence) pointing at a specific individual, who happens to be one of those detained. That individual is charged, ultimately decides to enter a plea of no contest to bank robbery, and is convicted. Although he may be unquestionably guilty of the underlying crime, it is equally unquestionable that the police lacked probable cause to arrest him at the time he was taken into custody.[4]

The court is aware of cases that have come to arguably contrary conclusions. Notably, in Oregon, the Oregon Court of Appeals found in State Farm Fire and Casualty Co. v. Sallak, 140 Or.App. 89 (Or.App. 1996) that a guilty plea could serve as a bar to a party from subsequently seeking to litigate the question of his guilt in a later civil proceeding, as a conviction following a criminal trial could. In so finding, the court stated that "a guilty plea is an admission of the ultimate facts that are the material elements of the crime charged in the indictment," id. at 93 (citing State v. Hetland, 31 Or.App. 529, 534 (Or.App. 1977)), and that "acceptance of Sallak's plea is the equivalent of a judicial determination of each of the material elements of Sallak's crime and satisfied the 'actually litigated' requirement of issue preclusion." Id. at 94. Thus, issues related to that party's ultimate guilt had previously been conclusively established. The Sallak court also noted that many jurisdictions, including the Ninth Circuit, similarly provided preclusive effect for the elements of a crime following a guilty or no contest plea, although it recognized that not all jurisdictions did so. Id. at 94-95 (collecting cases). Importantly, however, Sallak and the cited cases dealt with the issue of the party's guilt – not the issue of whether probable cause existed to arrest the party prior to the conviction. The court has not seen

---

4 Hopefully, the circumstances presented in that example do not often present themselves. The known facts and allegations in the instant case are also somewhat unusual, with the arresting officer arresting another police officer, and then suggesting during that officer's internal affairs investigation that he probably lacked probable cause to make the arrest.

8 - ORDER

a controlling case that establishes that it must give preclusive effect to the issue of probable cause based solely on a no contest plea to the elements of the offense and a petition to enter diversion.

Were there evidence before the court that plaintiff had been before a judge following his arrest for a preliminary hearing, and that the judge determined there was probable cause for the arrest and detention of plaintiff, there might be a case to be made that the issue of probable cause had been litigated and that that determination should be given preclusive effect. However, with the evidence presently before the court, it cannot be said that that issue has been fully and fairly litigated. As such, defendants' motions for summary judgment on collateral estoppel grounds must be denied.

## II. Judicial estoppel should not bar plaintiff from arguing the issue of probable cause.

Defendants also ask this court to judicially estop plaintiff from asserting the the arresting officers lacked probable cause to arrest him on the evening in question. Judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." Pegram v. Herdrich, 530 U.S. 211, 227 n.8 (2000). It is an equitable doctrine, invoked at the court's discretion. Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir. 1990). Perhaps the most pithy statement of the purpose of the doctrine was presented by the United States Supreme Court over a century ago:

> [W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.

Davis v. Wakelee, 156 U.S. 680, 689 (1895). In considering whether to invoke the doctrine, courts are informed by three main considerations: (1) whether the party's new position is clearly

9 - ORDER

inconsistent with its earlier position; (2) whether the party succeeded in persuading a court to accept that earlier position; and (3) whether the party would derive an unfair advantage over the opposing party, or impose an unfair detriment upon it, if the doctrine were applied. New Hampshire v. Maine, 532 U.S. 742, 750-51 (2001).

As was the case with collateral estoppel, the court does not agree that plaintiff's present position – that the officers lacked probable cause to arrest him – is clearly inconsistent with his earlier position that the state could call witnesses who could prove that he was guilty of driving under the influence. For the same reasons cited above, the court declines to invoke the doctrine of judicial estoppel to preclude plaintiff from arguing that probable cause to arrest him was lacking at the time the arrest was made.

Other courts have found that accepting the state's offer of a pretrial diversion program which, upon its successful completion, results in the dismissal of pending charges, should be a bar to a later suit attacking probable cause to arrest. See, e.g., Roesch v. Otarola, 980 F.2d 850, 853 (2nd Cir. 1992) ("A person who thinks there is not even probable cause to believe he committed the crime with which he is charged must pursue the criminal case to an acquittal or an unqualified dismissal, or else waive his section 1983 claim."); Konon v. Fornal, 612 F.Supp. 68, 71 (D.Conn. 1985) ("Having decided that the criminal charge at issue in the state court was not disposed of in a manner favorable to the plaintiff, thereby precluding the plaintiff from pressing his malicious prosecution claim in this section 1983 action, it would be anomalous to allow the plaintiff to challenge here the existence of probable cause for his arrest and incarceration for that same criminal charge."); Swanson v. Fields, 814 F.Supp. 1007, 1015 (D.Kan. 1993) ("[I]t is unlikely that the accused will choose [pretrial diversion] disposition . . . if there was no probable

10 - ORDER

cause for his arrest."). These courts make this call at least partially on the basis of the impact on the broader policy of encouraging pretrial diversion programs, noting, for example:

> If disposition pursuant to the accelerated rehabilitation law were held to leave open the plaintiff's right to bring a subsequent section 1983 action for false arrest and false imprisonment, fewer prosecutors would be willing to consent to such dispositions. . . . The intent of the Kansas legislature to create a less harsh alternative for first time offenders would be frustrated if prosecutors considered diversion less attractive because of the surviving potential for civil rights litigation on the very constitutional issues that would be resolved in a criminal proceeding. This rule is not fundamentally unfair to civil rights plaintiffs. Whatever reasons a person may have for taking diversion on the criminal charges, it is unlikely that such a person would pay a fine, agree to diversion, stipulate to the facts establishing the offense and allow the diversion to remain as a basis for sentence enhancement when there is a serious question whether probable cause even existed for his arrest.

Swanson, 814 F.Supp. at 1016. This court does not disagree that allowing, in appropriate cases, false arrest or imprisonment claims to go forward after a no contest plea and a diversion agreement might lessen prosecutors' motivation to allow no contest pleas for purposes of entering diversion. However, this problem should not result in the foreclosure of this plaintiff's right to maintain his false arrest claims when he did not stipulate that probable cause existed as part of his plea or diversion petition and can be addressed in future cases, if prosecutors feel the need, by requesting criminal defendants do so stipulate prior to the state supporting the plea and petition. Frankly, the court does not believe that this decision will have a major impact on the future use of the diversion program, but even if it does, that fact should not be used as a justification for barring plaintiff from asserting a constitutional claim he never agreed, explicitly or implicitly, to waive.

///

///

11 - ORDER

## **CONCLUSION**

Plaintiff agreed, in his plea of no contest and his petition to enter diversion, that the state could prove facts constituting each element of the offense of Driving Under the Influence of Intoxicants. His plea and petition did not address the issue of whether officers Iverson or Taufa'asau, or any other Newport police officers, had probable cause to arrest him when they did. As such, applying either collateral estoppel or judicial estoppel to that queston would be inappropriate. Defendants' motions for summary judgment are therefore denied.

Signed this 28 day of February, 2006.

_____
THOMAS M. COFFIN
United States Magistrate Judge

12 - ORDER