FILED'06 SEP 22 11:19 USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| NATHANIEL COOPER, | ) |
|     Plaintiff, | ) Civil No. 05-6303-TC |
| v. | ) ORDER |
| CITY OF NEWPORT, an incorporated subdivision of the State of Oregon; MARK JAMES MIRANDA; MICHAEL DEAN IVERSON; and ANDREW T. TAUFAASAU, | ) |
|     Defendants. | ) |

COFFIN, Magistrate Judge.

Presently before the court are defendants City of Newport, Mark James Miranda, and Michael Dean Iverson's motions (#35) for summary judgment and (#56) to strike,[1] and defendant Andrew T. Taufa'asau's motion (#41) for summary judgment.

---

[1] The motion to strike is denied.

1 - ORDER

## BACKGROUND

On February 28, 2004, plaintiff - a City of Tualatin police officer - attended the Newport Seafood and Wine Festival with several friends while off-duty. Because of problems related to intoxication during the festival in previous years, the City of Newport had increased police patrols during that weekend. Defendant Michael Iverson was working one such patrol, and defendant Mark Miranda, the Chief of Police, was providing support to patrol officers. Additionally, defendant Andrew Taufa'asau was on duty as a designated DUII officer.

While attending the festival, plaintiff consumed approximately 20-25 one or two ounce cups of wine. He left the festival at approximately 6:00 or 6:15 p.m., and returned to his hotel room at the Best Western, where he rested for about an hour before going to the lounge at the hotel with his friends. He may have had an additional beer at the lounge, but does not recall. However, while at the lounge, one of his friends spilled a full beer on his shirt, making it smell strongly of alcohol. Shortly thereafter, plaintiff and his friends went to the local Safeway to get firewood. At some point as plaintiff was leaving the Safeway, the windows in the pickup truck he was driving fogged up, and he struggled to see out of the windshield. While attempting to exit the parking lot, he felt his front tires going over something soft, but did not know what it was. Plaintiff, driving the truck, entered Highway 101.

Officer Iverson was on patrol duty that evening when he was made aware that a Toyota pickup truck had inappropriately exited a Safeway parking lot and entered Highway 101 by driving across a grass strip and a parking strip and over a curb.[2]  Iverson, who had been stopped in the

---

[2]It is disputed whether Iverson actually saw the truck jump the curb and cross the grass strip and parking strip or was informed of such by a citizen who observed it.

2 - ORDER

Safeway parking lot as well, exited the parking lot and pursued the truck. Upon initiating a stop of the truck, Iverson encountered plaintiff at the wheel. He spoke to plaintiff and noticed that plaintiff had droopy eyelids, a flushed face and watery eyes, and noticed an odor of alcohol coming from the truck. When plaintiff produced his driver's license and vehicle registration, Iverson noticed that his movements were slow. Plaintiff stared off into space occasionally as they spoke, and admitted to Iverson that he had been drinking. He also informed Iverson that he was a police officer. Iverson believed based on his observations and interactions with plaintiff that plaintiff was intoxicated.

Iverson then called Officer Taufa'asau to the scene, because Taufa'asau was designated to do DUII investigations. Upon Taufa'asau's arrival, Iverson told him about his observations of plaintiff and then returned to his patrol car.

Taufa'asau approached plaintiff, and saw that his shirt was covered in beer and that he smelled strongly of alcohol. He noticed that plaintiff's eyes were bloodshot and watery, and saw plaintiff slip when he got out of his truck. Plaintiff admitted to Taufa'asau that he had been drinking at the Seafood and Wine Festival. Taufa'asau twice asked plaintiff to perform standard Field Sobriety Tests, but plaintiff refused both times. At some point during Taufa'asau's investigation, plaintiff got very emotional and began crying.

Chief Miranda also observed plaintiff, and overheard Taufa'asau and Iverson discussing their observations and interactions with plaintiff. Based on his observations and the officers' discussion, Miranda believed probable cause existed to arrest plaintiff. At the time the decision to arrest plaintiff was made, Miranda agreed that plaintiff should be arrested.

Taufa'asau arrested plaintiff on the charge of driving under the influence of intoxicants, and transported him to the Lincoln County Jail. Taufa'asau twice asked plaintiff to submit to a

3 - ORDER

breathalyser, but plaintiff refused both times. Plaintiff eventually pleaded no contest to the DUII charge, entered into a diversion program, and the DUII charge was dismissed following his successful completion of the diversion program.

On October 5, 2005, plaintiff filed the instant action, in which he alleges defendants lacked probable cause to arrest him, and that by arresting plaintiff without probable cause defendants violated his rights under state and federal law.[3] Defendants now move for summary judgment on all claims.

## STANDARD OF REVIEW

A party is entitled to summary judgment as a matter of law if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c); Bahn v. NME Hosp's, Inc., 929 F.2d 1404, 1409 (9th Cir. 1991). The moving party must carry the initial burden of proof. This burden is met through identifying those portions of the record which demonstrate the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. Id. The facts on which the opponent relies must be admissible at trial, although they need not be presented in admissible form for the purposes of opposing the summary judgment motion. Id.

The court must view the evidence in the light most favorable to the nonmoving party. Bell v. Cameron Meadows Land Co., 669 F.2d 1278, 1284 (9th Cir. 1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. Hector v. Wiens,

---

[3]Plaintiff also brought a claim for malicious prosecution, but has withdrawn that claim.

4 - ORDER

533 F.2d 429, 432 (9th Cir. 1976). The inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Valadingham v. Bojorquez, 866 F.2d 1135, 1137 (9th Cir. 1989). Where different ultimate inferences may be drawn, summary judgment is inappropriate. Sankovich v. Insurance Co. of North America, 638 F.2d 136, 140 (9th Cir. 1981).

Deference to the non-moving party does have some limit. The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e) (emphasis added). Where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation, 475 U.S. 574, 587 (1986). The "mere existence of a scintilla of evidence in support of the plaintiff's position would be insufficient." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 252 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Id. at 248. However, trial courts should act with caution in granting summary judgment, and may deny summary judgment "in a case where there is reason to believe that the better course would be to proceed to a full trial." Anderson, 477 U.S. at 255.

## DISCUSSION

I. **Plaintiff's claims against the individual defendants**

The existence of probable cause to make an arrest is a defense to a claim of unconstitutional arrest under § 1983. Pierson v. Ray, 386 U.S. 547, 557 (1966). Probable cause to make an arrest exists if the facts and circumstances within the knowledge of the arresting officers, in light of their training and experience, would lead such officers to believe that the suspect has probably committed a criminal offense. United States v. Sears, 663 F.2d 896, 903-04 (9th Cir. 1981); see also Franklin v. Fox, 312 F.3d 423 (9th Cir. 2002) (probable cause exists when officers possess sufficient evidence

to conclude that a defendant had committed a crime). Officers must have a reasonable belief in the suspect's guilt, but are not required to have evidence sufficient to prove guilt beyond a reasonable doubt. Beaureguard v. Wingard, 362 F.2d 901, 904 (9th Cir. 1966). Under Oregon law, "a person commits the offense of driving while under the influence of intoxicants if the person drives a vehicle while the person . . . [i]s under the influence of intoxicating liquor . . . ." Or.Rev.Stat. ("O.R.S.") 813.010(1)(b). Drivers are deemed to have given consent to submit to field sobriety tests upon the request of a police officer if the police officer reasonably suspects that the driver is under the influence of intoxicants. O.R.S. 813.135. If a driver "refuses or fails to submit to field sobriety tests as required by O.R.S. 813.135, evidence of the person's refusal or failure to submit is admissible in any criminal or civil action or proceeding arising out of allegations that the person was driving while under the influence of intoxicants." O.R.S. 813.136.

It is clear that the undisputed facts observed by the officers presented them with probable cause to arrest plaintiff under the Oregon DUII statute. It is undisputed that, during the officers' interactions with plaintiff: (1) plaintiff admitted drinking at the Seafood and Wine Festival; (2) when the officers approached plaintiff, he smelled strongly of alcohol; (3) plaintiff's eyes were bloodshot and watery; (4) plaintiff was emotionally labile; and (5) plaintiff, although a police officer who was quite familiar with field sobriety tests, nonetheless refused on two occasions the officers' request that he submit to them. On these undisputed facts, no reasonable jury could find that the officers lacked probable cause to arrest plaintiff. See, e.g., Summers v. Utah, 927 F.2d 1165, 1166 (10th Cir. 1991) (erratic driving, scent of alcohol from the vehicle,. and refusal to take field sobriety tests established probable cause); United States v. Aguilar, 301 F.Supp.2d 1263, 1272 (D.N.M. 2004) (smell of alcohol, slurred speech, and the refusal to take field sobriety tests established probable cause); Mason

6 - ORDER

v. Stock, 955 F.Supp. 1293, 1304 (D.Kan. 1997) (erratic driving, admission of having consumed alcohol, difficulty communicating with officer, and refusal to take field sobriety tests established probable cause). Indeed, although not directly relevant to the issue of probable cause, the obvious question posed by this lawsuit is: what option did the officers have other than to arrest plaintiff? Presented with a driver who admits to drinking, smells of alcohol, has bloodshot eyes, breaks down into tears during questioning and refuses field sobriety tests,[4] whom an officer suspects of being under the influence of intoxicants, is the officer supposed to hand the driver his license back, wish him a good evening and let him return to the wheel? Or, as counsel for plaintiff suggested during oral argument, simply request that he refrain from further driving that evening, but otherwise let him go on his way? Neither of those options is either appropriate or desirable. And as plaintiff refused to perform the field sobriety tests (and then later refused to submit to a breathalyser), what else could the arresting officer do other than arrest him or let him go? Due to plaintiff's refusal, no further avenues of investigation to determine plaintiff's sobriety were available.[5]

At the end of the day, there is no question that Officers Iverson and Taufa'asau and Chief Miranda, based on the facts and observations available to them, had probable cause to arrest plaintiff on suspicion of driving under the influence of intoxicants. Plaintiff's only real argument to the contrary comes from comments that Officer Taufa'asau made during plaintiff's internal affairs review of the incident, wherein Taufa'asau suggested that his subjective opinion was that there was not

---

[4] Who has also been observed or reported to have driven over a curb and grassy strip to exit a parking lot.

[5] In any event, the officers were not required to exhaust every potential investigative option prior to making an arrest once they had enough information to believe that probable cause existed to arrest plaintiff. See Wadkins v. Arnold, 214 F.3d 535, 541 (4th Cir 2000); Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992).

7 - ORDER

probable cause to arrest plaintiff and that he did so only because Chief Miranda had instructed him to. The relevance of this evidence - provided by a police officer to the internal affairs officials investigating another police officer - is questionable, however, because regardless of Officer Taufa'asau's subjective state of mind, the clear objective facts presented to the officers established probable cause to arrest plaintiff. See Whren v. United States, 517 U.S. 806, 813 (1996) ("[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action."); Horton v. California, 496 U.S. 128, 138 (1990) ("[E]venhanded law enforcement is best achieved by the application of objective standards of conduct, rather than standards that depend on the subjective state of mind of the officer."). Further, nothing in the record undermines Officer Iverson's or Chief Miranda's statements that they subjectively believed probable cause existed to arrest plaintiff. No reasonable jury could conclude from the record, including Taufa'asau's statements to internal affairs, that probable cause did not exist on the objective facts presented nor that the officers, under Miranda's leadership, did not subjectively believe that probable cause existed.

Because probable cause existed to arrest plaintiff, his arrest did not violate his civil rights, and his Fourth Amendment and state law claims against the individual defendants for false arrest and illegal imprisonment must fail.[6]

## II.  **Plaintiff's claims against the municipal defendant**

As there was no underlying constitutional or statutory violation in plaintiff's arrest, plaintiff's

---

[6]Because there was no constitutional violation, I also note that the individual defendants would be entitled to qualified immunity. Saucier v. Katz, 533 U.S. 194 (2001).

8 - ORDER

claim against the City of Newport cannot stand, whether predicated on a Monell[7] theory or on a state law principal/agent theory.[8] As such, plaintiff's claims against the city must also fail.

## CONCLUSION

For the above stated reasons, defendants' motions (##35 and 41) for summary judgment are granted, and this case is dismissed. The Clerk shall enter the appropriate judgment.

DATED this 22 day of September, 2006.

Thomas M. Coffin
United States Magistrate Judge

---

[7]Under Monell v. Dept. of Social Services, 436 U.S. 658 (1978), to succeed on a § 1983 claim against the city, plaintiff must demonstrate that his constitutional rights were violated and that a policy of the county was a moving force behind the violation. Monell at 694; see also Mabe v. San Bernadino County, 237 F.3d 1101, 1111 (9th Cir. 2001).

[8]See Kraft v. Montgomery Ward & Co, Inc., 220 Or. 230, 251-52 (1960) (exoneration of a putative agent defeats the derivative liability of the principal).

9 - ORDER